IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Kenneth Riley,<br><br>*Plaintiff,*<br><br>v.<br><br>Borough of Eddystone et al,<br><br>*Defendants.* | CIVIL ACTION<br>NO. 24-1835 |

**Pappert, J.**                                                                                                                                                        September 10, 2024

## MEMORANDUM

Plaintiff Kenneth Riley sued the Borough of Eddystone for alleged violations of Title VII of the Civil Rights Act and sued the Borough along with five Eddystone officials—Rob Yannuzzi, William Stewart, Randy Perry, Ronald Hughes, and Dawn Jones—alleging claims under 42 U.S.C. § 1983 for First Amendment retaliation. The Borough and everyone but Jones move to dismiss all claims and for a more definite statement. Jones moves separately to dismiss Riley's claims against her.

The Court grants the first motion as to Riley's Title VII claims and the claims for First Amendment retaliation against the individual defendants in their official capacities. The Court denies the first motion as to Riley's individual-capacity First Amendment retaliation claims and denies the motion for a more definite statement as moot, given that Riley will be allowed to amend his Complaint. The Court grants Jones's motion as to the official-capacity First Amendment retaliation claim and denies it as to the individual-capacity claim.

1

I

Riley, who is Black, began working for the Borough of Eddystone's Streets Department as a Trashman on December 6, 2023. (Compl. ¶ 25, ECF No. 1.) He alleges that he encountered multiple instances of racist behavior during the course of his employment. (Compl. ¶ 30.) Specifically, he claims his co-worker Mike Dugan once told him that Eddystone has "gone downhill since the Blacks moved in," and another co-worker, John Catoni, "addressed a resident in the community as 'N-----.'" (Compl. ¶ 32.) Riley also alleges that he was called the N-word directly but does not say by whom or state the circumstances under which the unidentified individual uttered the slur. (Compl. ¶ 30.)

Riley reported these instances to his superiors three separate times, and they took no action to address the alleged conduct. (Compl. ¶¶ 35, 38, 42, 43, 46, 56.) On January 31, eight days after Riley made his third report, Borough Manager Dawn Jones cancelled Riley's shift for February 1. (Compl. ¶ 52.) On February 1, she also cancelled Riley's February 2 shift, and on the morning of February 5, she cancelled Riley's shift for that day. (Compl. ¶¶ 53, 55.)

Later on February 5, Riley attended the Borough Council's meeting—which was open to the public and recorded—and spoke during the "public forum." (Compl. ¶¶ 56, 58.) Each of the individual defendants attended that meeting.[1] (Compl. ¶ 99.) Riley spoke about his own alleged mistreatment, including that he was subject to racism and was bullied and that his supervisor had cancelled his shifts. *See* Eddystone Borough,

---

[1] The Court viewed the video recording of Riley's statements at https://www.youtube.com/watch?v=nRByQmKtHb0 from 26:30—31:30. Courts evaluating a motion to dismiss may review matters of public record. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

2024 February 5 Borough Council Workshop Meeting, YouTube (Feb. 20, 2024), https://www.youtube.com/watch?v=nRByQmKtHb0 (30:20–30:50) (hereinafter "Council Meeting").

Though the audio is muddled, Riley also appears to recount an incident where his co-worker used the N-word, and Riley states that he reported this to his supervisor who "swept it under the rug." (Council Meeting, 30:00–31:00.) Riley also recounted his co-worker's statement that Eddystone has "gone downhill since the Blacks moved in." (Council Meeting, 30:30.)

Later that same evening, Jones told Riley that the Borough "do[es] not have enough work, so we will not need you until further notice." (Compl. ¶ 61.) The next meeting of the Borough Council was on February 12, one week after the Council meeting at which Riley spoke. (Compl. ¶ 69.) At the February 12 meeting, Jones recommended that the Council fire Riley, which Riley alleges could only be accomplished by majority vote of the Council. (Compl. ¶ 69.) With one member abstaining, the Council vote was 3-3, with Stewart, Perry and Hughes voting to fire Riley. (Compl. ¶¶ 71–72.) Yannuzzi, Mayor of Eddystone at the time, broke the tie in favor of firing Riley. (Compl. ¶ 73.)

Riley asserts three claims under Title VII against the Borough: intentional discrimination based on race, hostile work environment based on race, and retaliation. And he brings claims of First Amendment retaliation under 42 U.S.C. § 1983 against the Borough and Defendants Stewart, Perry, Hughes, Yannuzzi, and Jones.

II

To avoid dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain facts sufficient to state a claim that is facially "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the factual allegations permit a court to make the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* The "mere possibility of misconduct" is not enough; the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678–79 (quoting *Twombly*, 550 U.S. at 570).

Determining plausibility is a "context-specific task" requiring a court to use its "judicial experience and common sense." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016)). In making this determination, the court assumes well-pleaded facts are true, construes those facts in the light most favorable to the plaintiff, and draws reasonable inferences from them. *Id.* at 790. The plaintiff need only allege enough facts to "raise a reasonable expectation that discovery will reveal evidence" of each element of his claim. *Connelly*, 809 F.3d, at 788–89. But "[c]onclusory assertions of fact and legal conclusions," are not entitled to the presumption of truth. *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016). So "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, (quoting *Twombly*, 550 U.S. at 555).

III

A

To allege intentional discrimination under Title VII, a plaintiff must demonstrate that (1) he was a member of a protected class, (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of intentional discrimination. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013).

A plaintiff may raise an inference of discrimination in various ways, including by alleging that similarly situated comparators were treated more favorably by their employer, similar racial discrimination against other employees, or direct evidence of racial animus such as discriminatory statements allegedly made by supervisors. *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 703 n.2 (3d Cir. 2010). A plaintiff may also raise an inference of discrimination by alleging that he was replaced by an individual outside of their protected class. *Lazard v. All Restore, LLC*, No. CV 19-6040, 2021 WL 1175137, at *7 (E.D. Pa. Mar. 29, 2021) (citing *Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x 239, 242 (3d Cir. 2007)).

Riley principally relies on paragraphs 30–49 of his Complaint (Pl.'s Br. 8, ECF No. 14), but those paragraphs contain no allegations about comparators, discrimination against other employees, discriminatory statements or actions by supervisors, nor any other facts raising a plausible inference of intentional discrimination. Riley's Complaint also later claims that "upon information and belief, [he was] replaced by … an employee who is not a member of his protected class" (Compl. ¶ 92), but the Court will not credit such a conclusory assertion. *See Wright v. Providence Care Ctr.*, LLC,

5

No. CV 17-747, 2017 WL 6059679, at *7 (W.D. Pa. Dec. 7, 2017) (holding similar statement insufficient to raise an inference of discrimination under 42 U.S.C. § 1981); *White v. FedEx Corp.*, No. 1:19-CV-00325, 2019 WL 5102168, at *3 (M.D. Pa. Oct. 11, 2019) (collecting cases holding similar statement insufficient under the Age Discrimination in Employment Act).

B

For a hostile-work-environment claim under Title VII, a plaintiff must allege facts that could show (1) he suffered intentional discrimination because of his race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) there is a basis for employer liability. *Mandel*, 706 F.3d, at 167.

Riley fails allege facts that could establish severe or pervasive discrimination. To do so, he must allege he experienced conduct that "alter[ed] the conditions of [his] employment and create[ed] an abusive working environment." *Nitkin v. Main Line Health*, 67 F.4th 565, 570 (3d Cir. 2023). Courts consider the frequency of the conduct; whether it was physically threatening or humiliating, or merely offensive; and whether it unreasonably interferes with the plaintiff's work. *Mandel*, 706 F.3d, at 168. Isolated incidents only suffice if they are extreme like, for example, a "supervisor['s] us[e of] a racially charged slur in front of [the plaintiffs] and their non-African-American co-workers … accompanied by threats of termination." *Castleberry v. STI Grp.*, 863 F.3d 259, 265 (3d Cir. 2017).

Riley alleges only the comment by Riley's co-worker that "the Borough's gone downhill since the Blacks moved in," and the use of the N-word by a different co-worker in addressing an Eddystone community member. (Compl. ¶ 31, 32.) These comments are not "severe" on their own nor taken together: they were not made by supervisors, do not concern the plaintiff in particular, and were not threatening or humiliating. And two comments over the course of two-and-a-half-months tenure is not "pervasive." Riley also alleges that he "was called 'N-----'" during his employment (Compl. ¶ 30), but does not state who said such a thing or the context in which it was allegedly said, precluding the inference that the comment amounted to or contributed to "severe or pervasive" conduct.

C

To state a claim for retaliation under Title VII, the plaintiff must show that (1) he engaged in protected employee activity; (2) the employer took an adverse employment action either after or contemporaneous with the protected activity; and (3) there is a causal connection between the protected activity and the adverse action. *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015).

Riley fails to allege that he engaged in a protected employee activity, which can either be participation in certain Title VII proceedings[2] or opposition to discrimination by the employer. *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006). But such participation or opposition is only protected if the employee reasonably and in good faith believes that the employer's conduct is prohibited by Title VII. *Id.* (citing *Clark County v. Breeden*, 532 U.S. 268, 271, 121 (2001) (per curiam)).

---

[2] An employee has "participated" when "he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C.A. § 2000e-3(a).

7

Riley claims he opposed the Borough's "severe and pervasive racism, discriminatory behavior, and hostile work environment," purportedly referring to the conduct underlying his intentional-discrimination and hostile-work-environment claims. (Compl. ¶¶ 35, 42, 56.) Riley's failure to allege facts raising an inference of discrimination undermines his ability to reasonably believe that the adverse employment actions were attributable to racial discrimination.

And while Riley fails to allege a hostile work environment claim, that does not rule out that he could reasonably believe that he was subjected to a hostile work environment. But he fails to allege facts that would make such a belief reasonable. First, statements directed to and concerning individuals other than the plaintiff are not severe. *See Caver v. City of Trenton*, 420 F.3d 243, 263 (3d Cir. 2005) ("[plaintiff] cannot meet the first element of the hostile work environment claim under Title VII … by pointing to comments that were directed at other individuals"). So Riley's claim that his co-worker once used a racial epithet to refer to someone else does little if anything to support a reasonable belief that he was subject to a hostile work environment. Second, courts consistently hold that isolated comments by co-workers do not create a hostile work environment. *See Fields v. Am. Airlines, Inc.*, 696 F. Supp. 3d 66 (E.D. Pa. 2023) (collecting cases). So the additional comment to Riley by another of his co-workers that the "Borough's gone downhill since the Blacks moved in," does not make Riley's belief that he suffered a hostile work environment any more reasonable. Lastly, even if Riley also opposed having been "called 'N-----'" (Compl. ¶ 30), for the reasons in III.B *supra*, he does not allege facts that could raise the inference that he reasonably believed that the comment created or contributed to a hostile work environment.

IV

Riley next asserts claims under 42 U.S.C. § 1983 for First Amendment retaliation against the Borough and the four individual members of the Borough Council who voted to terminate him.[3]

A

Section 1983 provides a cause of action against a "person" who, under color of state law, deprives the plaintiff of a federal right. 42 U.S.C. § 1983. Individuals and municipalities are both "persons" under § 1983, but a municipality cannot be liable under § 1983 simply by virtue of its agents or employees depriving the plaintiff of a federal right. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 689, 692 (1978). Rather, municipal liability requires that the injury be caused by "execution of [the municpality's] policy or custom." *Id.* at 691. A "policy or custom" includes, for the purposes of *Monell* liability, acts by agents who have "final and unreviewable" authority "in the particular area of municipal business in question." *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006). The Borough does not contest that the Borough Council has final and unreviewable authority to fire employees like Riley. *See also* 8 Pa.C.S.A. § 1005(1).

B

A plaintiff states a claim for First Amendment retaliation by alleging facts creating a reasonable inference that (1) he engaged in constitutionally protected conduct; (2) the defendant took retaliatory action that would "deter a reasonable person

---

[3] Riley's claims against the individual defendants in their official capacities are dismissed as duplicative of the claims against the Borough. *See Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006).

of ordinary firmness" from engaging in the protected conduct; and (3) a causal link exists between the protected conduct and retaliatory action. *Palardy v. Twp. of Millburn*, 906 F.3d 76, 80–81 (3d Cir. 2018).

1

A public employee is only protected against First Amendment retaliation by his employer if (1) the employee "spoke as a private citizen" and (2) "the statement involved a matter of public concern." *Fenico v. City of Philadelphia*, 70 F.4th 151, 162 (3d Cir. 2023). The Defendants contest only the second element. (Borough Defs. Br. 8; Jones Br. 8, ECF No. 16.)

Speech involves a matter of public concern when it "can be fairly considered as relating to any matter of political, social, or other concern to the community." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011). Courts "must determine whether expression of the kind at issue is of value to the process of self-governance." *Azzaro v. Cnty. of Allegheny*, 110 F.3d 968, 977 (3d Cir. 1997). "Personal grievances [and] complaints about conditions of employment" are not matters of public concern. *Palardy*, 906 F.3d, at 83. Determining whether speech involves a matter of public concern requires scrutinizing the "content, form, and context" of that speech. *Snyder*, 562, U.S., at 443. And when only a "small portion" of the plaintiff's relevant speech implicates a matter of public concern, courts cannot "cherry pick" that portion and ignore the remainder. *Miller v. Clinton Cnty.*, 544 F.3d 542, 550 (3d Cir. 2008). The speaker's motive in speaking is relevant but not dispositive. *Azzaro*, 110 F.3d at 978.

The content, form and context of Riley's statements at the February 5 meeting indicate that he spoke about the discriminatory attitudes toward and discriminatory

treatment of Eddystone community members by employees of the Eddystone Streets Department. And discrimination by those acting with public authority is a matter of public concern. *Azzaro*, 110 F.3d, at 978. While Riley's motivations for speaking out about discrimination appear to be personal—he complained of racism and bullying that he allegedly endured at work and said that Borough Manager Dawn Jones had been reducing his hours (Council Meeting, 30:00–31:00)—Riley juxtaposed these personal grievances with matters that at this stage implicate concern to the community.

Riley seemingly discussed at the meeting that one of his co-workers used the N-word around him. (Council Meeting, 29:19.) The audio is muffled, and the context of the co-worker's alleged use of the N-word is not entirely clear, but Riley alleges in his Complaint that his co-worker "addressed a resident of the community" with the N-word (Compl. ¶ 31), making it plausible that this was the alleged incident he described at the Borough Council meeting. Riley then explains that he reported his co-worker's use of the N-word to his supervisor, who "swept [it] under the rug." (Council Meeting, 30:25.) Riley also recounted his co-worker's alleged statement that the "Borough's gone downhill since the Blacks moved in." (Council Meeting, 28:38.) Thus, Riley's statements conveyed that members of the streets department use discriminatory language toward, and harbor discriminatory views about, the residents they are supposed to serve.

### 2

Riley must next allege facts raising the inference that the Defendants took retaliatory action sufficient to deter a person of ordinary firmness from exercising their constitutional rights. Whether a defendant's action meets this standard is a "fact-

intensive inquiry," so the plaintiff's burden is merely to allege retaliatory acts that are "more than *de minimis* or trivial." *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003). Examples of non-trivial acts include adverse hiring, promotion, or transfer decisions. *Id.* Riley's allegation that he was fired by the Borough Council pursuant to the votes of Stewart, Perry, Hughes, and Yannuzzi is therefore sufficient. (Compl. ¶ 72.) So too is Riley's allegation that, mere hours after the February 5 meeting, Jones cancelled his shifts for the indefinite future. (Compl. ¶ 61.) Although Jones had cancelled some of Riley's shifts intermittently leading up to the February 5 meeting (Compl. ¶¶ 52–55), the indefinite suspension and consequent absence of pay after the February 5 meeting is not a trivial change in circumstances.

3

Lastly, Riley must allege facts raising the inference that his speech caused the decision to fire him. Establishing causation necessarily requires a plaintiff to allege that the defendants knew about the protected activity. *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 275 (3d Cir. 2007). And one method for establishing a causal connection is to show "unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action." *Dondero v. Lower Milford Twp.*, 5 F.4th 355, 361 (3d Cir. 2021).

Riley alleges that each of the individual defendants attended the February 5 meeting and thereby knew of his statements. (Compl. ¶ 99.) He alleges that, within hours of Council meeting, Jones cancelled his shifts indefinitely (Compl. ¶ 61), temporal proximity that is unusually suggestive. *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016). He also sufficiently alleges a causal connection between his statements

at the February 5 meeting and the Council's decision to fire him. Only one week passed between Riley's speech and his firing (Compl. ¶¶ 56, 69), arguably sufficient temporal proximity standing alone. *See Miller v. Luzerne Cnty. Dep't. of Corr.*, No. 3:18-CV-858, 2022 WL 22017274 (M.D. Pa. Mar. 14, 2022) (collecting cases for the proposition that "days, rather than weeks or months" is unusually suggestive proximity). And Riley further alleges that the Council voted to fire him "[a]t the next Council meeting" after the one at which he spoke (Compl. ¶ 69), raising the inference that the Council fired him as soon as they practicably could. [4]

V

Riley requested leave to amend any claims the Court might dismiss. A court should grant a plaintiff leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). This rule expresses "a preference for liberally granting leave to amend" unless "amendment would cause undue delay or prejudice, or that amendment would be futile." *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). The Court will allow Riley to amend his Title VII claims.[5] He may do so on or before October 1, 2024.

An appropriate Order follows.

---

[4] The allegations in Riley's Complaint that imply a causal connection between his protected speech and the decision to fire him apply to each of the four defendants who voted to fire him, so the Court need not decide at this point whether Riley will ultimately have to prove that all four members of the majority were motivated by his protected speech or that only enough votes to make up the "deciding margin" (here, one vote) were so motivated. *Compare Watson v. Borough of Susquehanna*, 532 F. App'x 233, 236 (3d Cir. 2013) (nonprecedential) (holding that neither a municipality nor the individual members who sit on a decision-making body may be liable for the body's decisions unless a majority voted with an impermissible motive) *with Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 262 (6th Cir. 2006) (holding that plaintiffs need only show that enough voting members to make up the deciding margin voted with an impermissible motive).

[5] Given the leave to amend, the Court denies as moot the request for a more definite statement.

BY THE COURT:


*/s/ Gerald J. Pappert*

Gerald J. Pappert, J.